**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
    Email: mkane@mcguirewoods.com
Sabrina A. Beldner, Esq. (SBN 221918)
    Email: sbeldner@mcguirewoods.com
Amy E. Beverlin, Esq. (SBN 284745)
    Email: abeverlin@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Tel:   (310) 315-8200
Fax:   (310) 315-8210

Sylvia J. Kim (SBN 258363)
    Email:  skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone:  415.844.9944
Facsimile:  415.844.9922

Attorneys for Defendant
WATKINS AND SHEPARD TRUCKING, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SNOW, an individual and on behalf of others similarly-situated and aggrieved employees,<br><br>Plaintiff,<br><br>vs.<br><br>WATKINS AND SHEPARD TRUCKING, INC., a Montana Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>[San Bernardino County Superior Court Case No. CIVDS1823509]<br><br>**DEFENDANT WATKINS AND SHEPARD TRUCKING, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>Complaint Filed:   September 7, 2018 |

107497649.3

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant WATKINS AND SHEPARD TRUCKING, INC. ("Defendant"), by and through its undersigned counsel, hereby removes the above-entitled action currently pending in the Superior Court of the State of California in and for the County of San Bernardino (the "State Court") to the United States District Court for the Central District of California on the ground that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and all other applicable bases for removal.  In support of its Notice of Removal, Defendant avers as follows:

**STATE COURT ACTION**

1. On September 7, 2018, Plaintiff Richard Snow ("Plaintiff") filed a Complaint against Defendant in the State Court, styled as *Richard Snow, individually and on behalf of others similarly-situated and aggrieved employees v. Watkins and Shepard Trucking Inc., a Montana Corporation; and DOES 1 through 10, inclusive,* Case No. CIVDS1823509 (the "State Court Action"), a true and correct copy of which is attached hereto as Exhibit A.

2. On or about September 17, 2018, Defendant's registered agent for service of process was personally served with a copy of the Summons and Complaint.

3. True and correct copies of the Summons, Complaint, and every other process, pleading, and order served on Defendant in this action to date are attached hereto as the Exhibits identified below:

| **Exhibit** | **Document** |
|:---:|:---|
| A | Complaint |
| B | Summons on Complaint |
| C | Civil Case Cover Sheet |
| D | Certificate of Assignment |

107497649.3

1

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

E       Notice of Case Assignment for All Purposes; Notice of Case Management Conference

F       Guidelines for the Complex Litigation Program

4.      Defendant is informed and believes that the following additional document is also on file in the State Court Action:

**Exhibit   Document**

G       Proof of Service of Summons

5.      Defendant is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

6.      Defendant is informed and believes that it is the only defendant which has been properly served with process in the State Court Action.  Defendants Does 1-10 have yet to be identified and are therefore disregarded for the purposes of this removal.  28 U.S.C. § 1441(a).  As such, Defendant is the only defendant needed to consent to this removal.

**REMOVAL JURISDICTION**

7.      This court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-15, and all other applicable bases for removal.

8.      As required by 28 U.S.C. § 1441, Defendant removes this case to the United States District Court for the Central District of California, which is the District Court embracing the place where the State Court Action was filed.

9.      This action has not been previously removed to federal court.

10.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that a Notice of Removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." Defendant has timely filed this Notice of Removal within thirty days of the date it

107497649.3

2

NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

was served with and received the Summons and Complaint in this action.

11.   In accordance with 28 U.S.C. § 1446(d), Defendant will provide contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

## CAFA JURISDICTION

12.   There is no presumption against removal under CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 550, 554 (2014) ("*Dart Cherokee*") ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"). To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'" *Id.* at 554, *quoting* S. Rep. No. 109-14, p. 43 (2005).

13.   This Court has original jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d)(2).  Under CAFA, this Court has jurisdiction over class actions where any member of the class is a citizen of a State different from defendant, and where the aggregate amount in controversy exceeds the sum of $5 million, exclusive of interest and costs, and the number of members of all proposed plaintiff classes in the aggregate is at least 100 class members.  28 U.S.C. § 1332(d)(2)-(6).  CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

14.   This action is one which may be removed to this Court by Defendant because: (1) the number of members of all proposed plaintiff classes in the aggregate is more than 100 class members; (2) there is diversity of citizenship between Plaintiff and Defendant; and (3) the amount in controversy for all class members exceeds $5,000,000.00.

### MINIMUM DIVERSITY EXISTS

15.   **Plaintiff's Citizenship.**  At all times during Plaintiff's employment with Defendant, he has had a State of California driver's license, mailing address, and phone number.  Defendant is informed and believes that Plaintiff is residing and

intends to indefinitely remain living continuously in California, and that his domicile presently is in California. Accordingly, Plaintiff is a resident and citizen of the State of California for purposes of CAFA. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).[1]

16. **Defendant's Citizenship.** As shown on the California Secretary of State's Business Entity Search website, Defendant is a Montana corporation with its corporate headquarters and principal place of business in Green Bay, Wisconsin:

### Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Monday, October 8, 2018. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

**C3692899    WATKINS AND SHEPARD TRUCKING, INC.**

| | |
|---|---|
| **Registration Date:** | 07/10/2014 |
| **Jurisdiction:** | MONTANA |
| **Entity Type:** | FOREIGN STOCK |
| **Status:** | ACTIVE |
| **Agent for Service of Process:** | THE CORPORATION COMPANY (C2172119) |
| | To find the most current California registered Corporate Agent for Service of Process address and authorized employee(s) information, click the link above and then select the most current 1505 Certificate. |
| **Entity Address:** | 3101 S PACKERLAND DR. GREEN BAY WI 54313 |
| **Entity Mailing Address:** | 3101 S PACKERLAND DR. GREEN BAY WI 54313 |

*See* URL at http://kepler.sos.ca.gov/cbs.aspx (search terms entered: "Watkins and Shepard Trucking, Inc."). At its corporate headquarters, Defendant's officers direct, control and coordinate its activities and the majority of its executive and

---

[1] *See also Mondragon v. Capital One Auto Finance*, 776 F.3d 880, 885-86 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (holding that California was the state of domicile for a party with a California residential address and a valid California drivers' license); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

administrative functions are performed there.  Thus, Defendant was not and is not a citizen of the State of California but, rather, was and is a citizen of Montana and Wisconsin for the purpose of determining jurisdiction.[2]

17.    Based on the foregoing, CAFA's minimum diversity requirement is satisfied because Plaintiff purports to be a member of the putative class he seeks to represent and is a citizen of a state (California) that is different from Montana and Wisconsin.

### THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000.00

18.    Defendant alleges based on the following calculations that the amount in controversy exceeds $5,000,000.00 only for the purpose of establishing subject matter jurisdiction under CAFA.  Defendant's allegations and calculations are not admissions of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's allegations, or whether a class action is proper.[3]

19.    A removing defendant's notice of removal need only contain plausible allegations to demonstrate the amount in controversy.  Evidentiary submissions are not required unless and until the removing defendant's allegations are contested by the plaintiff or questioned by the court:

---

[2] *See Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010) (the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," and in practice, the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination."); *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

[3] *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015), *quoting Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial.'").

In sum, as specified in 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Dart Cherokee*, 135 S.Ct. at 554.

20. The plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse*, 775 F.3d at 1202 (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what a court or jury might later determine to be the actual amount of damages, if any.[4]

21. Plaintiff purports to bring the California state law claims alleged in this action pursuant to California Code of Civil Procedure § 382 as a class action, and seeks class certification on behalf of the following Proposed Class:

"All current and former employee drivers of Defendants who worked in California at any time within the Relevant Time Period and who are/were paid on a 'piece rate' and/or rate-per-mile basis for compensation purposes for work performed in California."

*See* Exh. A (Complaint), ¶ 25.

### Size Of Proposed Class

22. According to the Complaint, the Proposed Class is "sufficiently numerous that joinder is impracticable." *See* Exh. A (Complaint), ¶ 28(a). Indeed,

---

[4] *See Ibarra*, 775 F.3d at 1198 n. 1, *citing Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal"); *St. Paul Mercury*, 303 U.S. at 291 ("the status of the case as disclosed by the complaint is controlling in the case of a removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *Wilder v. Bank of America*, 2014 U.S. Dist. LEXIS 168932, *4 (C.D. Cal. Dec. 5, 2014) (citing cases holding that in measuring the amount in controversy, the court assumes that a jury will return a verdict on all claims asserted in the complaint, and that the ultimate inquiry is what the complaint alleges, not what the defendant might actually owe).

there are more than 100 current or former California-based driver employees who worked for Defendant during the proposed class period and ostensibly are within the definition of Plaintiff's Proposed Class, as Defendant presently understands it. Therefore, the aggregate membership of the proposed class is at least 100 as required under CAFA.  *See* 28 U.S.C. § 1332(d)(5)(B).

### CAFA Amount In Controversy

23.     The claims of the individual members in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. §§ 1332(d)(6), (11).   In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. 109-14, at 42.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[5]

24.     Defendant's data for its California-based driver employees (the "Drivers"), which is presently available to Defendant, from September 7, 2014 through September 7, 2018, was used to determine the CAFA amount in controversy for purposes of this Notice of Removal, and that voluminous data can be summarized as follows:

a.     For the **one-year** period ending on the date of the filing of the Complaint in this action (September 7, 2017 through September

---

[5] S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

107497649.3

7

7, 2018):

    i.    At least **155 Drivers** worked for Defendant.

    ii.    The Drivers worked for Defendant for an **aggregate total of 19,352 calendar days**.

    iii.    The Drivers were paid at an **average effective hourly rate of $25.92**.

    iv.    The Drivers were issued a total number of **4,371 payroll checks**.

b.    For the **three-year** period ending on the date of the filing of the Complaint in this action (September 7, 2015 through September 7, 2018):

    i.    At least **292 Drivers** worked for Defendant.  Of those 292 Drivers, **180 Drivers have terminated their employment** with Defendant.

    ii.    The Drivers worked an average of **8.99 recorded hours per workday**.

    iii.    The Drivers were paid at an **average effective hourly rate of $24.68**.

c.    For the **four-year** period ending on the date of the filing of the Complaint in this action (September 7, 2014 through September 7, 2018):

    i.    At least **355 Drivers** worked for Defendant.

    ii.    The 355 Drivers worked for Defendant for an **aggregate total of 44,322 calendar days**.

    iii.    The Drivers worked an average of **8.99 recorded hours per workday**.

    iv.    The Drivers were paid at an **average effective hourly rate of $24.08**.

***First Cause of Action for Minimum Wage Violations***

25.    Plaintiff's **First Cause of Action** for **minimum wage violations** alleges that Defendant "maintained and continue[s] to maintain a practice of refusing to compensate Class Members for time spent not driving, including but not limited to, fueling vehicles, waiting for the loading and unloading of trailers, moving products for customers, performing pre- and post-trip inspections, adjusting equipment, checking brakes and trailers, securing loads, and completing paperwork."    *See* Exhibit A (Complaint) at ¶ 37.   Plaintiff's Complaint further alleges that Drivers' allegedly uncompensated work duties included "cleaning, fueling, check in and check out, loading and unloading trailers, collecting payment from customers, and moving product for customers, adjusting equipment, checking brakes and checking trailers, securing loads, reporting any accidents and/or claims." *Id.* at ¶ 8.  Based on the foregoing allegations, Plaintiff seeks to recover the amount of unpaid minimum wages pursuant to Cal. Lab. Code §§ 1194 and 1194.2.  *Id.* at ¶ 42.

26.    Plaintiff's **Fifth Cause of Action** alleging **violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"),** purports to seek restitution of such unpaid minimum wages. *Id.* at ¶¶ 80, 89.  This purported claim is subject to a four-year statute of limitations.

27.    During the four-year period prior to the filing of the Complaint (September 7, 2014 through September 7, 2018), the minimum wage in California was as follows:

| Date Range | Minimum Wage |
| --- | --- |
| July 1, 2014 – December 31, 2015 | $9.00 |
| January 1, 2016 – December 31, 2016 | $10.00 |
| January 1, 2017 – December 31, 2017 | $10.50 |
| January 1, 2018 – present | $11.00 |

107497649.3

9

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

28. For purposes of determining the amount in controversy for the alleged unpaid minimum wage compensation underlying Plaintiff's claim for relief, Defendant conservatively utilizes a $9.00 minimum wage and reasonably has assumed that each of the Drivers will claim to have spent at least 30 minutes (or 0.50 hours) performing non-driving tasks each day for which they claim they should have been but were not paid the minimum wage.

29. Accordingly, Defendant calculates the amount in controversy for the alleged unpaid minimum wages as follows:

| Minimum Wage Rate | | Non-Driving Time | | Total Number of Days Worked | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $9.00 | x | 0.50 | x | 44,322 | = | $199,449 |

30. Accordingly, the amount in controversy on Plaintiff's First and Fifth Causes of Action for minimum wage violations is **$199,449**.

### *Second Cause of Action for Rest Break Violations*

31. Plaintiff's **Second Cause of Action** for **rest break violations** alleges that Defendant failed to authorize and permit ten-minute rest periods, paid as separate hourly pay in addition to piece-rate (or by-the-mile) pay for [PCMs] subject to the Defendants' piece-rate or pay-by-the-mile rate, for every four hours worked (or  major fraction thereof)." *See* Exh. A (Complaint), ¶ 48. Plaintiff further alleges that Defendant's failure to authorize and permit rest periods and/or pay separate hourly compensation for such rest periods was part of a "uniform and systematic policy of Defendants," *id.* at ¶ 48, and that Defendant "never paid [Plaintiff and PCMs] all wages due to them … because these employees were never paid any of the additional hours of wages with respect to rest periods…." *Id.* at ¶ 53.   Plaintiff seeks recovery of "minimum and regular wages for all rest periods" that were not separately compensated by Defendant.  *See* Prayer for Relief at ¶ e.

32. Plaintiff also alleges that Defendant "further failed to provide

107497649.3

10

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

compensation in lieu of rest periods not provided" and "fail[ed] to pay one hour of additional wages in lieu of each rest period not provided" on a "systematic[]" basis. *Id.* at ¶¶ 47, 50, 122.  Plaintiff seeks "one hour of additional wages at the employee's regular rate of compensation for each work day that a rest period was not lawfully provided" pursuant to Cal. Lab. Code § 226.7.  *Id.* at ¶ 50 & Prayer for Relief at ¶ e.

33.    Plaintiff's **Fifth Cause of Action** alleging **violations of the UCL** purports to seek restitution of such unpaid wages and rest break premiums.  *Id.* at ¶¶ 80, 89 & Prayer for Relief at ¶ h.  This purported claim is subject to a four-year statute of limitations.

34.    Notably, Plaintiff does not allege that he or the PCMs were *ever* compensated separately for rest breaks, *ever* received *any* legally compliant rest breaks or were *ever* paid for any such non-compliant breaks.  On that basis, Defendant reasonably assumes that each of the PCMs will claim to have not been provided and/or paid for at least one compliant rest break for each calendar day they worked for Defendant.[6]  *See*, *e.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1149-50 (C.D. Cal. 2010) (Collins, J.) (holding that the defendant properly utilized a 100% violation rate for missed meal and rest breaks when calculating the amount in controversy for CAFA removal purposes where the plaintiff had alleged that the class members "consistently" worked without meal breaks); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015) (holding that a 100% violation rate was properly utilized where the plaintiff's complaint alleged the maintenance of "uniform policies, practices and procedures" and did "not contain any allegations that suggest a 100% violate rate is

---

[6] As set forth above, the PCMs spent an average of 8.99 hours per day working for Defendant during the applicable four-year limitations period.  Thus, pursuant to the allegations in the Complaint, each PCM would claim to be entitled to at least two rest breaks each calendar day.

an impermissible assumption").

35.     Therefore, Defendant calculates the amount in controversy on the rest break putative class action claim as follows, based solely on the one hour of additional wages sought pursuant to Cal. Lab. Code § 226.7:

| Average Effective Hourly Rate | | Violations Per Day | | Total Days Worked | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $24.08 | x | 1 | x | 44,322 | = | $1,067,273.76 |

Accordingly, the amount in controversy on the **Second and Fifth Causes of Action** is at least **$1,067,273.76**.

### *Third Cause of Action for Waiting Time Penalties*

36.     Plaintiff's **Third Cause of Action** seeks **waiting time penalties** pursuant to Cal. Lab. Code § 203 in the amount of "30 days' wages as a penalty under Labor Code section 203" at the regular hourly rate of pay for former employees who are in the Proposed Class. *See* Exh. A (Complaint), ¶¶ 53, 59 & Prayer for Relief at ¶ f.  This claim is subject to a three-year statute of limitations.

37.     As set forth above, at least 180 Drivers terminated their employment with Defendant during the three-year period ending on the date of the filing of the Complaint in this action, and their average effective hourly rate paid during that time period was $24.68.  Additionally, while, as set forth above, the Drivers worked an average of 8.99 hours per day during this time, for purposes of removal, Defendant utilizes a conservative 8-hour workday. Accordingly, the amount in controversy on Plaintiff's Third Cause of Action for statutory waiting time penalties is **$1,066,176** ($24.68 x 8 hours x 30 days x 180 Drivers).

### *Fourth Cause of Action for Failure to Provide Accurate Wage Statements*

38.     Plaintiff's **Fourth Cause of Action** for **inaccurate wage statements** alleges that Defendant failed to provide Plaintiff and the PCMs with complete and

107497649.3

12

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

accurate wage statements and, on that basis, Plaintiff seeks to recover statutory penalties for the proposed class pursuant to Cal. Lab. Code § 226(e) ("Section 226(e)") in an amount equal to fifty dollars ($50) per PCM for the initial pay period in which a violation occurs and one hundred dollars ($100) per PCM for each violation in a subsequent period, not to exceed $4,000 per PCM. *See* Exh. A (Complaint), ¶¶ 69, 74 & Prayer for Relief at ¶ g. This claim is subject to a one-year statute of limitations.

39. Plaintiff alleges that Defendant "knowingly and intentionally failed to furnish Plaintiff and [PCMs] with complete itemized wage statements accurately listing gross and net wages earned, the pay period begin date, and the address of the legal entity that is the employer." *See id.* at ¶ 69. Plaintiff also alleges that "[t]he mileage and the corresponding rates are not differentiated on the wage statement from hours worked and results in further confusion regarding the amount of pay earned." *Id.*

40. Because Plaintiff's inaccurate wage statement claim purports to assert a stand-alone claim for wage statement violations, it is reasonable to interpret Plaintiff's Complaint as alleging that he and the Drivers *never* received accurate wage statements from Defendant. Defendant's above-summarized data shows that at least 172 Drivers worked for Defendant during the one-year period ending on the date of the filing of the Complaint in this action and that they received an aggregate total of 4,371 payroll checks during that time frame. Therefore, the amount in controversy on Plaintiff's Fourth Cause of Action for inaccurate wage statement penalties is **$428,500**:

172 initial pay periods x $50 = $8,600

4,199 subsequent pay periods (4,371 – 172) x $100 = $419,900

$8,600 + $419,900 = $428,500 (or, an average of $2,491 per Driver)

### Sixth Cause of Action for Civil Penalties

41. Plaintiff's Complaint also purports to seek **civil penalties** under his

107497649.3

13

**Sixth Cause of Action** pursuant to the California Labor Code Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2699 et seq., on behalf of the Proposed Class for Defendant's alleged failure to pay minimum and overtime wages in violation of California Labor Code §§ 223 and 1198. *See* Exh. A (Complaint) ¶¶ 91-110. Plaintiff seeks civil penalties pursuant to Cal. Lab. Code § 2699(f) on behalf of himself and other Drivers in the amount of $100.00 for each aggrieved employee per pay period for the initial violation and $200.00 for each aggrieved employee per pay period for each subsequent violation. *Id.* at ¶ 105.

42. Plaintiff also purports to seek civil penalties for Defendant's alleged failure to pay minimum and overtime wages pursuant to Cal. Lab. Code §§ 558 and 1197.1 for purported violations of Cal. Lab. Code §§ 1197, 1198 and Industrial Welfare Commission ("IWC") Order 9-2001. Because there are already established civil penalties provided in Cal. Lab. Code §§ 558[7] and 1197.1[8], Defendant utilizes the penalties provided under those sections for purposes of calculating the amount in controversy on Plaintiff's Sixth Cause of Action.

43. Based on Defendant's data and the allegations of the Complaint as set forth above, Defendant calculates the total amount in controversy on Plaintiff's Sixth Cause of Action for civil penalties to be no less than **$3,209,450** ($1,714,000 + $428,500 + 1,066,950.00), as follows:

---

[7] Cal. Lab. Code § 558 provides for the recovery of civil penalties in the amount of $50 per underpaid employee for each pay period for any initial violation and $100 per underpaid employee for each pay period for any subsequent violation and are assessed in addition to any other civil or statutory penalties recoverable under the law. It also provides for the possibility of an additional recovery of the wages alleged to have been underpaid. If that amount were also included in the PAGA penalties calculation, the amount-in-controversy on Plaintiff's Sixth Cause of Action would be higher.

[8] Cal. Lab. Code § 1197.1 provides for the recovery of a civil penalty of $100 per underpaid employee for each pay period for any initial violation and $250 per underpaid employee for each pay period for any subsequent violation.

107497649.3

14

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

<u>Cal Lab. Code § 2699(f) Penalties</u>

(Violations of California Labor Code §§ 223 and 1198)

172 initial pay periods x $100 = $17,200

4,199 subsequent pay periods (4,371 – 172) x $200 = $839,800

$17,200 + $839,800 = $857,000 total penalties per statute allegedly violated

$857,000 x 2 statutes allegedly violated = $1,714,000

<u>Cal. Lab. Code § 558 Penalties</u>

(Violations of Cal. Lab. Code § 1198 / IWC Wage Order 9-2001)

172 initial pay periods x $50 = $8,600

4,199 subsequent pay periods (4,371 – 172) x $100 = $419,900

$8,600 + $419,900 = $428,500 total penalties per statute allegedly violated

$428,500 x 1 statute allegedly violated = $428,500

<u>Cal. Lab. Code § 1197.1 Penalties</u>

(Violations of California Labor Code § 1197)

172 initial pay periods x $100 = $17,200

4,199 subsequent pay periods (4,371 – 172) x $250 = $1,049,750

$17,200 + $1,049.750 = $1,066,950.00

$1,066,950.00 x 1 statute allegedly violated = $1,066,950.00

### *Seventh Cause of Action for Civil Penalties*

44.     Plaintiff's Complaint also purports to seek **civil penalties** under his **Seventh Cause of Action** pursuant to PAGA on behalf of the Proposed Class for Defendant's alleged failure to provide paid rest periods and/or pay for non-compliant rest periods in violation of California Labor Code §§ 226.7, 558 and 1198.  *See* Exh. A (Complaint) ¶¶ 112-126.  Plaintiff seeks civil penalties on behalf of himself and other Drivers pursuant to Cal. Lab. Code § 2699(f) for violations of Cal. Lab. Code § 226.7 and 1198 in the amount of $100.00 for each aggrieved employee per pay period for the initial violation and $200.00 for each aggrieved employee per pay period for each subsequent violation.  *Id.* at ¶¶ 123-124.

107497649.3

15

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

45.     Plaintiff also seeks recovery of civil penalties pursuant to Cal. Lab. Code §§ 558 for violations of IWC Wage Order 9-2001 and 1198 in the amount of $50.00 for each underpaid employee per pay period for the initial violation and $100.00 for each underpaid employee per pay period for each subsequent violation. *Id.* at ¶¶ 123-124.

46.     Based on Defendant's data and the allegations of the Complaint as set forth above, Defendant calculates the total amount in controversy on Plaintiff's Seventh Cause of Action for civil penalties to be no less than **$2,142,500** ($1,714,000 + $428,500), as follows:

<u>Cal Lab. Code § 2699(f) Penalties</u>

(Violations of California Labor Code §§ 226.7 & 1198)

172 initial pay periods x $100 = $17,200

4,199 subsequent pay periods (4,371 – 172) x $200 = $839,800

$17,200 + $839,800 = $857,000 total penalties per statute allegedly violated

$857,000 x 2 statutes allegedly violated = $1,714,000

<u>Cal. Lab. Code § 558 Penalties</u>

(Violations of California Labor Code § 1198 / IWC Wage Order 9-2001)

172 initial pay periods x $50 = $8,600

4,199 subsequent pay periods (4,371 – 172) x $100 = $419,900

$8,600 + $419,900 = $428,500

***Eighth Cause of Action for Civil Penalties***

47.     Plaintiff's Complaint also purports to seek **civil penalties** under his **Eighth Cause of Action** pursuant to PAGA on behalf of the Proposed Class for Defendant's alleged failure to provide accurate itemized wage statements in violation of California Labor Code §§ 226 and 1174.  *See* Exh. A (Complaint) ¶¶ 128-141.  Based on the alleged violations, Plaintiff seeks civil penalties on behalf of

107497649.3

16

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

himself and other Drivers pursuant to Cal. Lab. Code §§ 226.3[9] and 1174.5[10]. *Id.* at ¶¶ 136-137, 139, 141.

48.    Based on Defendant's data and the allegations of the Complaint as set forth above, Defendant calculates the total amount in controversy on Plaintiff's Eighth Cause of Action for civil penalties to be no less than **$4,242,500** ($4,242,000 + $500), as follows:

<u>Cal Lab. Code § 226.3 Penalties</u>

(Violation of Cal. Lab. Code § 226)

172 initial pay periods x $250 = $43,000

4,199 subsequent pay periods (4,371 – 172) x $1000 = $4,199,000

$43,000 + $4,199,000 = $4,242,000

### ***Ninth Cause of Action for Civil Penalties***

49.    Plaintiff's Complaint also purports to seek **civil penalties** under his **Ninth Cause of Action** pursuant to PAGA on behalf of the Proposed Class for Defendant's alleged failure to timely pay wages owed in violation of California Labor Code §§ 201-202, 204, 2926, 2927 and IWC Wage Order 9-2001. *See* Exh. A (Complaint) ¶¶ 154-55.    Based on the alleged violations, Plaintiff seeks civil penalties on behalf of himself and other Drivers pursuant to Cal. Lab. Code §§ 210[11], 558 and 2699(f). *Id.* at ¶ 156 & Prayer for Relief at ¶ l.

50.    Based on Defendant's data and the allegations of the Complaint as set forth above, Defendant calculates the total amount in controversy on Plaintiff's

---

[9] Plaintiff seeks penalties pursuant to Cal. Labor Code § 226.3 in the amount of $250.00 per employee for an initial violation, and one thousand dollars $1,000.00 per employee for each violation in a subsequent violation in which California Labor Code § 226 was violated. *See id.* at ¶ 132.

[10] Cal. Lab. Code § 1174.5 provides for the recovery of a civil penalty in the amount of $500.

[11] Plaintiff seeks penalties pursuant to Cal. Labor Code § 210 in the amount of $100 per employee for an initial violation, and one thousand dollars $200.00 per employee for each violation in a subsequent violation in which California Labor Code § 226 was violated. *See id.* at ¶ 151.

Ninth Cause of Action for civil penalties to be no less than **$4,713,500** ($3,428,000 + $857,000 + $428,500), as follows:

Cal Lab. Code § 2699(f) Penalties

(Violation of Cal. Lab. Code §§ 201, 202, 2926, 2927)

172 initial pay periods x $100 = $17,200

4,199 subsequent pay periods (4,371 − 172) x $200 = $839,800

$17,200 + $839,800 = $857,000 total penalties per statute allegedly violated

$857,000 x 4 statutes allegedly violated = $3,428,000

Cal Lab. Code § 210 Penalties

(Violation of Cal. Lab. Code § 204)

172 initial pay periods x $100 = $17,200

4,199 subsequent pay periods (4,371 − 172) x $200 = $839,800

$17,200 + $839,800 = $857,000

Cal. Lab. Code § 558 Penalties

(Violations of IWC Wage Order 9-2001)

172 initial pay periods x $50 = $8,600

4,199 subsequent pay periods (4,371 − 172) x $100 = $419,900

$8,600 + $419,900 = $428,500

***Statutory Attorneys' Fees***

51.     Plaintiff also seeks **statutory attorneys' fees** in connection with all of his causes of action in the Complaint.  *See* Exh. A (Complaint), ¶¶ 42, 51, 75, 89, 109, 123, 137, 156, and Prayer for Relief at ¶ m.  In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005); *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018 (N.D. Cal. 2003); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be

107497649.3

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

included in the amount in controversy."). Where, as here, a common fund recovery potentially is sought, the Ninth Circuit uses a benchmark rate of 25% of the potential award as an estimate for attorneys' fees. *See, e.g., Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.,* 331 Fed.Appx. 452, 457 (9th Cir. 2009). Utilizing Defendant's calculations of the amount in controversy on Plaintiff's First through Fifth Causes of Action on behalf of the Proposed Class and the 25% benchmark for attorneys' fees used in the Ninth Circuit, Defendant calculates the amount in controversy on Plaintiff's **statutory attorneys' fees claim** to be no less than **$4,267,337.19** [($199,449.00 + $1,067,273.76 + $1,066,176.00 + $428,500.00 + $3,209,450 + $2,142,500 + $4,242,500 + $4,713,500) x 25%].

52.    Based on the foregoing calculations, the **total amount in controversy** on Plaintiff's First through Eighth Causes of Action for the putative class action claims of the Proposed Class is calculated to be at least **$21,336,685.95**, which exceeds the $5 million jurisdictional threshold under CAFA:

| Cause of Action / Claim | Amount in Controversy |
| --- | --- |
| Minimum Wage Violations (First & Fifth Causes of Action) | $199,449.00 |
| Rest Break Violations (Second & Fifth Causes of Action) | $1,067,273.76 |
| Waiting Time Penalties (Third Cause of Action) | $1,066,176.00 |
| Inaccurate Wage Statement Penalties (Fourth Cause of Action) | $428,500.00 |
| Civil Penalties (Sixth Cause of Action) | $3,209,450 |
| Civil Penalties (Seventh Cause of Action) | $2,142,500 |

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

| | |
|---|---:|
| Civil Penalties (Eighth Cause of Action) | $4,242,500 |
| Civil Penalties (Ninth Cause of Action) | $4,713,500 |
| Statutory Attorneys' Fees (25%) | $4,267,337.19 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$21,336,685.95** |

53.    Defendant expressly reserves the right to further refine these and/or include any other additional amounts in controversy, should any aspect of the amount in controversy set forth herein be challenged.

### VENUE

54.    This is a civil action brought in a California state court. Defendant is informed and believes that the events allegedly giving rise to this action occurred within this judicial district. Accordingly, as the State Court Action is now pending in San Bernardino County, California, Defendant is entitled, pursuant to 28 U.S.C. § 1441(a), to remove this action to the United States District Court for the Central District of California.

### NOTICE TO PLAINTIFF AND STATE COURT

55.    Contemporaneously with the filing of this Notice of Removal in this Court, written notice of such filing will be served on Plaintiff's counsel of record as reflected in the attached Certificate of Service. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California in and for the County of San Bernardino.

///

///

///

///

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

WHEREFORE, Defendant respectfully requests that the above-captioned action now pending in the State Court be removed to this United States District Court.

DATED: October 17. 2018          **MCGUIREWOODS LLP**

By: _____/s/ Matthew C. Kane_____
        Matthew C. Kane, Esq.
        Sabrina A. Beldner, Esq.
        Sylvia J. Kim, Esq.
        Amy E. Beverlin, Esq.

        Attorneys for Defendant
        WATKINS AND SHEPARD
        TRUCKING. INC.

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067.

On October 17, 2018, I served the following document described as **DEFENDANT WATKINS AND SHEPARD TRUCKING, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Michael D. Singer                          *Attorneys for Plaintiff*
Kristina De La Rosa                        *Richard Snow*
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐ **BY FACSIMILE:** At approximately _____, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was 310.315.8210. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 17, 2018, at Los Angeles, CA.

_____
Matthew Whitney

107497649.3

22

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**